(Cuyahoga County Court of Common Pleas.)

THE CLEVELAND CITY RAILWAY COMPANY v. THE CITY OF CLEVE-
LAND.

*Street R. R.—Power of city to remove switch in street by force without applying to court.*

Where a street railway company, having accepted an ordinance from municipal authorities providing the terms and conditions under which it may construct and operate a line of street railway, including all necessary switches, turn-outs, etc., and where, acting under such ordinance, the company has constructed, as part of its road, a switch necessary to the reasonable and proper operation of its road, and the city authorities, without legal proceeding, declaring the switch to be unnecessary, without notice to the company, and without legal steps for a total pro tanto forfeiture of the franchise granted, tore up the switch and refused to permit the railway company to replace it, and defend an application for an injunction upon the ground that the switch is not necessary, and that the plaintiff has made an improper use of it.

Held: First, such action on the part of the city in thus constituting its officers judges of law and fact and determining the necessity of the switch, and in enforcing its decree by force, is clearly an unwarranted interference with the contract rights of the street railway company, and such action is a trespass upon its property and an impairment of its franchise, for which the law furnishes no adequate remedy, and the company is entitled to an injunction restraining the municipal authorities from interfering with the re-laying of the switch, and from again removing it except as the result of due process of law.

Second, It is no reason for refusing such relief that the railway company has, at times, made an improper use of the switch. Municipal corporations are not exempt from the obligation which rests upon all persons and corporations, to secure redress for wrongs by due process of law, and to refrain from arbitrary interference with the rights of others ; and if the street railway company failed to perform its contract obligation, the city must seek its legal remedy. It cannot be permitted totake the law into its own hands.

---

ONG, J.

This case is before the court on application of the plaintiff, by petition for injunction. The petition, after alleging the corporate capacity of the plaintiff, among other things charges that on the 17th day of July, 1893, an ordinance was passed by the city of Cleveland, the defendant, granting the plaintiff permission to extend its street railway by a double track from Corwin Avenue to Woodland Hills Avenue, on South Woodland Avenue, in the city of Cleveland; and then sets forth section 1 of

the ordinance, which makes the usual provisions for the necessary curves, switches, turn-outs, poles, etc., for the operating and maintaining of such road or extension. The petition further charges the fact to be that plaintiff constructed its road or extension under the grant referred to, together with a switch at or near Oakdale street; which switch, they say, was necessary in the operating of its cars over the line thus extended. It further says that the defendant, without any notice, on the 17th of November, 1896, tore up and destroyed the switch referred to, and deprived the plaintiff of its use. That the plaintiff demanded of the city the right to restore the switch, and that the defendant refused this permission; and that the switch is necessary, it says, to the proper operation of its cars over such line. And then the plaintiff charges that the tearing up of the switch was unlawtul, and that the defendant unlawfully refused to permit it to relay the same; that it was in violation of the franchise granted by the defendant, and that the replacement of it is necessary to the proper operation of the road, and clearly within the provisions of the grant or contract relations that have been created. The plaintiff therefore prays for a restraining order restraining the defendant and its agents and servants from in any manner interfering with the plaintiff in the relaying of the switch, and that the city be enjoined from interfering with the plaintiff in mantaining and operating the same as a part of its railway. A further prayer is made for damage, which is not, however, involved in this hearing.

To this petition the defendant, the city of Cleveland, answers, and admits all the allegations of the petition set forth as to the corporate capacity of the plaintiff, the granting of the franchise and the removing of the switch at the time alleged in the petition; but denies that the switch referred to in the petition was a necessary appurtenance to the proper operation of the plaintiff's street car line, and says that the same was used for unlawful purposes; denies that the tearing up was unlawful; denies that its refusal is unlawful, or its interfering with the relaying of the same is unlawful; and it further says, as a second defense, that under the ordinance or franchise granted and by resolution adopted on the 14th of September, 1896, the plaintiff was required to run all cars to the top of Woodland avenue hill that passed or went beyond Wilson avenue over its line. It further says that the switch referred to is at or near the foot of the hill, and that it has been by the plaintiff used practically as the terminus of its road; that passengers have been repeatedly, in all kinds of weather, invited to leave the car and wait for one to ascend the hill transferring the east bound cars at that point over on to the west bound track, and returning them to the city without going to the end of the line, to-wit—the top of the hill; and the city charges that such is and has been the use to which such switch was put by the plaintiff, thereby enabling it to violate the conditions of its franchise in that regard; and for that reason, it says that the plaintiff is not entitled to the relief sought, because it says that if the switch is so replaced, it would continue to be used for such unauthorized, wrongful and unlawful purpose; and they ask that the prayer of the plaintiff's petition be denied.

To this a reply is filed by the plaintiff, taking issue with all the new matter alleged in the defendant's answer, and averring some affirmative matters in the line of the claim set forth in the petition.

The matter came up for hearing on affidavits in Room 1, and was hurriedly disposed of, temporary injunction refused, advanced and referred to this branch of the court for final determination.

Considerable contention was had by counsel for the plaintiff as to the right of the court, on the pleadings, to hear testimony bearing upon the is-

sues thus tendered; but the court believed that it could better arrive at the rights of the parties by hearing the testimony, and did take testimony for two days; limiting, however, both sides in the testimony; and I limited it for the reason that I regarded it, after a number of witnesses had been heard, as merely cumulative; and intimated during the trial, after having heard a portion of the testimony on both sides, that an agreed statement of facts, it seemed to the court, could have been submitted, raising what the court regards as the real question in controversy.

And now, to briefly dispose of the question of fact, I want to say that if I regarded the fact upon which testimony has been received as very material to the final disposition of the case, I would have no hesitancy in finding that the use of the switch in controversy was necessary to the reasonable and proper operation of the railroad; and on the other hand, I would have no hesitancy in concluding that the switch thus constructed and maintained by the company has been used in an unreasonable and improper manner on many occasions so far as passengers were concerned destined to the end of the road; but I do not regard that issue as material in determining the rights of the plaintiff in this action, beyond the fact of establishing the reasonable necessity of such a switch or crossing; and on that proposition there is no serious conflict or controversy in the testimony but what its construction and maintenance at the place used on the line was and is a reasonable and necessary appendage to the road and to its reasonable and proper operation.

That brings us, then, to the more important question; and that is, as to the relief the plaintiff seeks in this court. Now, it is not to redress the wrong, if wrong it was to remove the switch; but it asks to be permitted to relay the switch without interference on the part of the defendant. Does the petition and the law authorize a court of equity to interfere and aid the plaintiff in accomplishing that result, bearing in mind that the court has found the fact from the testimony to be that such a switch is reasonable and necessary in the operation of the road?

It is contended by the plaintiff that in the granting and accepting of the franchise referred to, contract relations were created and established; and on this proposition there is no controversy, nor could there be a successful maintenance of the opposite or converse proposition. The plaintiff further insists that in complying with its contract or grant, it at the time of the construction of its railway lines, built and constructed in conjunction and connection therewith, the switch in controversy; that the city, the defendant, assented thereto, and that it has maintained said switch and used the same, it says, for legitimate purposes, for the period of three years; and while the franchise was still in force, contract relations existing, without any notice to the plaintiff, or demand that it remove or abandon the use of the switch, the city authorities, without the direction or action of the city council, forcibly tore up, disconnected and removed the switch. The plaintiff contends that this act on the part of the city, through its agents and officers, was wrong and unlawful; and that upon the discovery of the same, it applied to the proper authority for permission to relay the switch, which permission was refused; and that it is now entitled to the aid of a court of equity in order that it may relay the switch and have the status quo restored.

The city, in meeting this claim, say: "Yes, your switch was built with the knowledge of the city, and maintained for some three years. Yes, the city tore it up without notice or demand that you remove the same; and it is true that the city will not grant you a permit to relay it; and without such permit, you dare not disturb the street in reconstructing the same." And the city further says the plaintiff is not entitled to

the relief sought in this action, for the reason that it has not kept in good faith all the conditions of its franchise; that it has not carried passengers at all times to the top of the hill; that it has not run all its cars to he top of the hill as directed by the resolution of the council; that it has sed and was using the switch, at the time the same was removed, for he purpose of avoiding its contract: and at times, at least, was using the switch for illicit purposes, and therefore it does not come into court with clean hands, and for that reason must go hence without redress in a court of equity; and again, that the questioned right between the parties is one of law, and it must first have its legal right fixed or determined by judgment at law, and then and not until then invoke the aid of the chancellor.

It will be understood that neither party in this action is seeking redress or recovery for the wrongs done and complained of, and therefore the determination of the same at this time and in this action is not necessary, in order to grant or refuse the relief sought, and I shall refer to the same thing as showing the situation between the parties. As I have said, I find no trouble in finding and coming to the conclusion that the railroad, or the plaintiff, have time and again turned cars back on that switch, when they could have gone to the top of the hill, and that they have used the switch at times for such purpose in disregard of the resolution adopted by the council. And that being true, as claimed by the defendant, let us test the claim of the defendant to defeat the plaintiff of the relief sought in this action.

Suppose the plaintiff, in operating its railway lines in the city, should refuse a part of the time to give transfers, or suppose it should refuse to furnish tickets to passengers, a given number for a given price, or should refuse to stop at the designated cross-walks, or should refuse to carry the designated signals at night, all of which are provided for by the ordinances and resolutions of the council; would the remedy be, either with or without the action of the council for the city authorities, to tear up its tracks, destroy its trolly wire, dig out its switches and cross-over tracks, spike its turn-tables or in any other manner forcibly interfere with its machinery and appliances, so as to render it much less effective in the performance of its contract duties toward the public? Clearly not; and it would be a sad commentary upon the civilization of the country, if the law in this day and age would permit of such acts at the election of municipal officers, without notice, demand, or even an opportunity to be heard; and to my mind it would be a long step backward, if the courts were to permit the municipality, through its agents and officers, guilty of such conduct, to come into court and say: "We have determined that you are not complying with your contract, and therefore you ought not to be heard or granted relief. We ought not to be restrained from continuing our unlawful acts." The very first rule of equity would require the chancellor to close his ear to the plea of such a party, and deny him the right to be heard at all. Granting that the railroad was not complying with its franchise in this case, and for the reason set forth in the answer and proof of the defendant; who would think of asking the chancellor to make an order to destroy the switches or cross-overs, (even if it should appear that they were not, in the opinion of the court, necessary to the operating of the road,) as a means of compelling the railroad company to comply with its contracts? No one, for no precedent or rule of law can be found for such a decree, unless it be in the case of nuisance; much less ought the act of the Board of Control be recognized as a lawful act in thus impairing contract rights and practically destroying property. Counsel for the defendant forget, in contending to the court that the

plaintiff is violating its contract with passengers, and the city, that the the city in tearing up the plaintiff's tracks or switches, thereby rendering it less able to serve the entire patronage along its lines, was guilty of a much greater breach of duty, if not of contract, than the plaintiff; for it is the duty of the defendant to see that the people of the municipality have the best possible service; and if a portion are not receiving the service, it illy becomes the law-preserving power of the city to so conduct itself in attempting to correct one wrong as to do or create a greater one.

Street railroads have been an indispensible necessity in conducting and managing the business of great cities; but ample power is reserved not only in the organic law of the state, but in every statute and ordinance upon the subject, to enforce all reasonable conditions and burdens lawfully imposed; but it is not by destroying its property or arbitrarily tearing up its tracks or switches. In this case, complaint was made to the city authorities that the plaintiff was not complying with its franchise or contract. The city council heard the complaint and directed by resolution what should be done. Complaint was made that the plaintiff was disregarding the resolution. Then, instead of the city using this reserved power in one of many ways, it or some of its officers determined that the switch was not necessary to the reasonable operating of the road, and that the road could get along without it, and therefore it would tear it up and not allow the plaintiff to relay it, and by that means punish the plaintiff and compel it to comply with its contract. The mere statement of the facts refutes any claim of authority for such conduct.

Who had determined that it was not complying with its contract? Why, the city, or some officer of the city—the other party to the contract. The city in this instance, though a party to the contract, proposes to declare the breach on the part of the other party, fix the penalty and enforce the punishment; and while thus holding the plaintiff by the throat, so to speak, it proposes to defeat the plaintiff of relief in a court of equity by saying to the court that the plaintiff has not clean hands, and has not, in its judgment, done equity, although itself asking for no relief. It might just as well have destroyed any other switch or any other part of the road. Furthermore, it is not now seriously contended by counsel for the defendant, that the city had the right to do what it did, and if contended for it would not be tenable, for the reason that no authority or tribunal authorized by law ever undertook to declare the switch unnecessary for the reasonable operating of the road. But it is contended by the city that having been done, and the plaintiffs not having kept and performed all the conditions of its franchise, it, the plaintiff, can have no relief in equity. Such a proposition can receive no consideration at the hands of the chancellor. If the city or individuals may thus go and take up the switches or destroy property without appealing either to law or equity, it would not be long until serious conflict would arise, and the law-preserving power of the city would soon be involved in attempting to quiet or over-power those who were defendang their property rights against the unlawful assaults of the city itself. To hear the city and defeat the plaintiff in this case, or deny it the relief sought, would be for a court to recognize the clearly unauthorized and unlawful acts of the defendant. This a court of equity ought not to do, and will not do.

Again, it is said the plaintiff's legal rights must first be determined What legal rights? Why, the very right that the city refused to submit or appeal to the law to determine, but undertook to determine and fix for itself—that of the necessity of the use of the switch in controversy, or the failure on the part of the plaintiff to comply with its franchise. Can

the city now be heard to say that the plaintiff must first resort to a court of law to redress a dispute between the parties, when it itself undertook to determine that question, and in so doing perpetrated an unlawful act? Clearly not. The equity powers of the court are broad enough and active enough to grant the relief sought in this case and to restore the status quo and allow the defendant to pursue a lawful remedy, and invoke the aid of a court of law, or equity, as it may seem fit to, and as may be its rights, to redress any wrong done or perpetrated by the plaintiff.

The prayer of the petition will be granted, and injunction allowed.

Squire, Saunders & Dempsey, for Plaintiff.

M. G. Norton and Judge Phillips, for Defendant.